UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEVIN ZAHNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:24-cv-01042-MTS |
| | ) |
| FRANK BISIGNANO, *Commissioner of* | ) |
| *the Social Security Administration*,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant, the Commissioner of the Social Security Administration.[2] On May 6, 2022, Plaintiff Devin Zahner applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 (the "Act"). (Tr. 169–74). Plaintiff alleges disability due to anxiety, panic attacks, poor comprehension, post-traumatic stress disorder ("PTSD"), Tourette's syndrome, blood clots, depression, a learning disability, and attention deficit hyperactivity disorder, with an alleged onset date of June 2, 2021. (Tr. 13, 199). In October 2023, following a hearing, an Administrative Law Judge ("ALJ") issued his decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 23). For the following reasons, this matter is reversed and remanded for further proceedings.

---

[1] Frank Bisignano is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper defendant.

[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act during the relevant disability period, (Tr. 24), the Appeals Council denied Plaintiff's request for review (Tr. 1–5); thus, the ALJ's decision stands as the Commissioner's final decision.

1

I.     **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite h[is] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to his past relevant work by

2

comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work or does not have any past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*,

3

621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found that Plaintiff had not performed substantial gainful activity ("SGA") since the application date of May 6, 2022. (Tr. 15). At Step 2, the ALJ found that Plaintiff has severe impairments of PTSD, major depressive disorder, panic disorder, a learning disorder, and an anxiety disorder. *Id.* At Step 3, the ALJ found that, during the relevant period, Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. (Tr. 16). Thus, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with non-exertional limitations. (Tr. 18). The ALJ determined that Plaintiff was limited to simple, routine, and repetitive tasks, but not at a production rate pace; that he was able to make simple work-related decisions; and that he was limited to occasional interactions with co-workers, supervisors, and the public. *Id.* At Step 4, the ALJ found that Plaintiff had no past relevant work. (Tr. 23). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there were jobs in the national economy that Plaintiff could have performed, despite his limitations, such as tumbler operator, bonding printer, and laundry worker. (Tr. 22–23). Consequently, the ALJ concluded that Plaintiff was not disabled under the Act since May 6, 2022. (Tr. 23).

### III.     Discussion

Plaintiff argues that the ALJ improperly discounted his subjective complaints regarding his psychological symptoms, which caused the ALJ to assess an RFC that is unsupported by substantial evidence. Doc. [14]. Plaintiff alleges that his panic attacks and paranoia prevent him from leaving the house and interacting with others, that his nightmares and insomnia cause fatigue during the day, that his intrusive and racing thoughts interfere with his ability to concentrate, and that his anhedonia has caused him to lose motivation to leave the house and complete simple tasks. *Id.* at 3–4. He contends that his subjective complaints are consistent with the objective evidence from medical and nonmedical sources. *Id.* at 5–17. Plaintiff also takes issue with the ALJ's evaluation of Dr. David Lipsitz's psychological consultative examination. *Id.* at 9–10.

The Court finds that the ALJ improperly evaluated Plaintiff's subjective complaints regarding his longstanding mental health impairments. First, substantial evidence does not support the ALJ's finding that Plaintiff enjoys a "wide range of daily activities" that are "inconsistent with his alleged limitations and allegation of disability." (Tr. 20). Instead, the record indicates that Plaintiff lives with his parents and primarily spends his days watching television and listening to music because his paranoia, anxiety, and depression prevent him from leaving the house and interacting with others. (Tr. 39, 206, 209, 214–19). Approximately once per week, one of Plaintiff's parents drives him to a nearby grocery store late in the evening when the store is almost empty. (Tr. 209, 217). At the store, Plaintiff quickly purchases a few items and leaves within 10 to 15 minutes. Plaintiff's recurring nightmares, panic attacks, and anxiety make it difficult for him to stay asleep, which leaves him tired during the day. (Tr. 206, 207, 215, 270, 297, 324, 343). Plaintiff makes himself sandwiches and frozen dinners to

5

eat, cleans his room approximately once per week, and does his own laundry once every two weeks.  (Tr. 43, 208).  Such "minimal daily activities, consisting primarily of watching TV, are consistent with chronic mental disability."  *Pate-Fire v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).  Additionally, the Eighth Circuit has made clear that "the ability to do activities such as light housework . . . provides little or no support for the finding that a claimant can perform full-time competitive work."  *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) ("[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." (citation modified)); *Hutsell*, 259, F.3d at 713 ("[A] claimant need not be bedridden to qualify for disability benefits." (citation modified)).

Second, the record does not support the ALJ's determination that Plaintiff's testimony regarding the severity of his symptoms was inconsistent with the record based on the treatment notes from Plaintiff's appointments with his psychiatrist, Dr. Yi Deng, between March 2021 and June 2023, which the ALJ characterized as "reflect[ing] relatively normal mental status examinations and improvement in his psychological symptoms with treatment and medication compliance."  (Tr. 21).  Contrary to the ALJ's characterization, the treatment notes show that despite receiving treatment and taking numerous medications, Plaintiff consistently reported that he was experiencing anxiety, depression, paranoia, nightmares, panic attacks, mood swings, avoidance of others, fear of leaving the house, low motivation, difficulty concentrating, and difficulty staying asleep throughout the relevant time period.  (Tr. 45, 219, 270, 307, 312–13, 324, 343, 369, 374, 389, 404).  For example, during a June 2023

6

appointment, Plaintiff reported that he was still experiencing "more anxiety, racing thoughts of something bad happening to him if he goes out in public," "more nightmares," "panic attacks in [his] sleep," "avoiding crowds" and "watching the news" because he "[f]ears people will hurt him," "feel[ing] watched at grocery stores," "Buspar not helping," "difficulty staying asleep," "depression," and "low energy worsening." (Tr. 374). During that same appointment, Dr. Deng increased Plaintiff's medications, noting that Plaintiff's major depressive disorder, anxiety disorder, and PTSD had worsened. (Tr. 378–79). The record shows that Dr. Deng often adjusted Plaintiff's prescriptions and that Plaintiff received additional psychological treatment from his therapist, PLPC Christa Moore, every other week with only limited improvement throughout the relevant time period.[3] *See Hutsell*, 259 F.3d at 712–13 (explaining that occasional indications that plaintiff was "doing well" in her treatment program were "not inconsistent with a finding of disability" and noting that plaintiff's treating physician had not discharged her from treatment, required her to see him regularly, and continued prescribing psychiatric medication); (Tr. 273, 278, 315, 318, 328, 379, 394, 401, 408, 425).

The ALJ appears to have relied heavily on treatment notes from a December 2021 appointment during which Plaintiff told Dr. Deng that he had run out of his medications for a month and had been experiencing worsening anxiety, depression, and insomnia as a result. *See*

---

[3] The ALJ did not discuss PLPC Moore's treatment notes, which are consistent with Plaintiff's testimony regarding the severity of his symptoms. *See, e.g.*, (Tr. 431) ("Client reports to therapist that he at times feels like his thoughts are not his, sees laser lights, and sees shadowy figures."); (Tr. 420) ("Reports having thoughts that something bad is going to happen, and feels that's not his own thoughts. . . ."); (Tr. 436) ("Client was incredibly defensive about his position that current world events make this thought [that if he walks outside of his house someone will shoot him] plausible in that he cannot ever leave his house."); *see also Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (stating that while an "ALJ is not required to explain all the evidence in the record[,]" "this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion" (quoting *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004))).

7

(Tr. 21) (citing Tr. 307).  But this instance of noncompliance does not show that Plaintiff's psychological symptoms improved with treatment and medication compliance or undermine Plaintiff's subjective complaints given that the rest of the objective evidence shows that—although Plaintiff was compliant with treatment and medication—he continued to report significant psychological symptoms throughout the relevant time period.  *See, e.g.*, (Tr. 314) (noting that Plaintiff reported "[o]ngoing depression, low motivation, [and] low energy, despite restarting meds" during his January 2022 appointment); (Tr. 374) ("Pt reports more anxiety, racing thoughts of something bad happening to him if he goes out in public, getting more nightmares. . . .  Buspar not helping."); (Tr. 389) ("He continues to feel paranoid in public [and] that people are watching him which makes him uncomfortable and nervous.").  Moreover, the ALJ failed to properly consider whether Plaintiff's "lack of complete compliance" was the result of his mental impairments.  *See Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1029 (E.D. Mo. 2017) ("The Eighth Circuit has repeatedly recognized that a mentally ill claimant's noncompliance with treatment can be, and ordinarily is, the result of the mental impairment itself and cannot, with nothing more, be deemed willful or unjustifiable to such an extent that the claimant's subjective complaints relating thereto should be discredited." (citing *Pate-Fires*, 564 F.3d at 945–47)).

In sum, it appears that the ALJ ignored evidence of worsening and severe symptoms while focusing on Plaintiff's occasional reports that some of his symptoms had improved and failed to consider the waxing and waning nature of Plaintiff's mental impairments.  *See Lillard v. Berryhill*, 376 F. Supp. 3d 963, 988 (E.D. Mo. 2019) (reversing and remanding where "the ALJ failed to consider the waxing and waning nature of [plaintiff]'s mental illness, focused only on a limited period of improvement, and ignored evidence of worsening symptoms");

8

*Naumann v. Kijakazi*, 4:20-cv-1048-MTS, 2022 WL 670134, at *5–6 (E.D. Mo. Mar. 7, 2022) (collecting cases that were reversed and remanded for similar reasons); *Santiago v. Saul*, 4:19-cv-0001-CDP, 2020 WL 1083573, at *6 (E.D. Mo. Mar. 6, 2020) (reversing in part because "the ALJ's selective review of the record for positive notations of improvement does not support his determination to discount [plaintiff]'s testimony that he continued to experience depressive symptoms despite treatment and medication").  Here, the longitudinal picture of Plaintiff's mental impairments shows that he continues to exhibit significant psychological symptoms and occasionally experiences "limited periods of improvement with eventual relapse.  There is simply no evidence in the record that [he] can work on a sustained basis." *Lillard*, 376 F. Supp. 3d at 988; *see also Bland v. Saul*, 2:18 CV 95 NAB, 2020 WL 1929786, at *8 (E.D. Mo. 2020) (reversing the ALJ's decision where the ALJ failed to consider how the plaintiff's "structured and homebound lifestyle affects the severity of her symptoms" (citing 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F)); 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F) (providing that in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as highly structured and supportive settings that may greatly reduce the mental demands on the claimant).

Finally, because the Court concludes that remand is necessary due to the ALJ's failure to properly evaluate Plaintiff's mental impairments, it need not address Plaintiff's arguments regarding the ALJ's RFC determination and evaluation of Dr. David Lipsitz's medical opinion.  The Court notes, however, one inconsistency with respect to the ALJ's discussion of Dr. Lipsitz's consultative examination.  Specifically, the ALJ stated that Dr. Lipsitz's finding that Plaintiff's intellectual functioning was in the "extremely low" range "appears to be based primarily on the claimant's reported history of special education in school given Dr. Lipsitz

did not document any intelligence testing." (Tr. 22). But Dr. Lipsitz provided the following explanation immediately after his finding:

> [Plaintiff] shows memory problems for recent . . . events. He was only able to repeat three digits forward and could not repeat three digits backward. He did not know the current Governor of Missouri and he could not name four past presidents since 1950, although he did know the current President of the United States, his place of birth, date of birth, and his social security number. His concentration was poor. He was unable to do serial threes backwards from 25, although he was able to handle minor mathematical functions. His insight and judgment w[ere] poor. He was unable to make adequate generalizations based on past social experiences and he was unable to successfully interpret proverbs. His thought processes are primarily preoccupied with his emotional problems and his inability to function independently within society.

(Tr. 369). This explanation suggests that Dr. Lipsitz ran several standard tests to assess Plaintiff's intellectual functioning, and his observations seem to be consistent with the record as a whole. *See, e.g.*, (Tr. 92) (stating that Plaintiff's high school records indicated that he was "functioning in the low average range of intellectual ability," that Plaintiff had a learning disability in written language, and that "auditory memory, problem solving[,] and reasoning are noted weaknesses for him."); (Tr. 348) ("Client displayed limited understanding of anxiety."); (Tr. 351) ("Client displayed limited knowledge and was reluctant or unable to explain feelings."). "[A]bsent some explanation, the Court "will not fill in the gaps for the ALJ." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020); *see also Hirner v. Saul*, 2:21-cv-0038-SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022) ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions.").

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED**.  A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th of September 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE